Mr. Lee Douglass Arkansas State Insurance Commissioner 400 University Tower Building Little Rock, Arkansas 72204
Dear Mr. Douglass:
This is in response to your request for an opinion on three questions concerning your authority to promulgate rules and regulations. Specifically, you note that the Omnibus Budget Reconciliation Act of 1990 ("OBRA 1990") contains a number of important new provisions for the regulation of Medicare supplemental insurance. See 42 U.S.C. § 1395ss. This new federal law contains federal requirements and requirements for changes in state laws. As required by federal law, the National Association of Insurance Commissioners (NAIC) has come up with a Model Act and a Model Regulation to implement the provisions of OBRA 1990. Under federal law, states are given one year from July 30, 1991, to adopt the NAIC Model Act and Model Regulation. States which fail to adopt the Model Act and Model Regulation will be required to have Medicare supplement policies approved by the Health Care Finance Administration before such policies are offered for sale in Arkansas.
Because, you note, there has not been a legislative session since July 30, 1991, the Model Act has not been adopted in Arkansas. Your questions thus involve whether you, as Arkansas Insurance Commissioner, have authority under current Arkansas Code provisions to adopt a regulation which is substantially similar to the Model Regulation.
Before answering your three specific questions, it should be noted that OBRA 1990 also provides that in states in which legislation is required to implement the Model Act and Regulation, and in which no legislative session is scheduled to meet in 1992, the date for adoption of the standards is extended to the first day of the first calendar quarter beginning after the close of the first legislative session that beings on or after January 1, 1992. 42 U.S.C. § 1395ss (p)(1)(C)(ii). Thus, if legislation is required in Arkansas to implement the provisions of OBRA and no session is scheduled in 1992, the July 31, 1992 deadline will be extended until after the next session. It is my understanding, however, that your office would like, if possible, to implement the Model Regulation sooner than the extended deadline provided for in federal law.
You note three specific potential problem areas surrounding this contemplated action. In this regard, your first question is as follows:
 Whether it contravenes the grant of authority under Arkansas law for the promulgation of a regulation by the Arkansas Insurance Commissioner that requires a thirty (30) day free look for all Medicare policies?
You note that a current provision of the Arkansas Code, A.C.A. §23-79-112(f)(2) (Cum. Supp. 1991), provides that "[a]ll medicare supplement policies issued pursuant to a direct response solicitation shall contain a notice stating in substance that the policyholder shall have thirty (30) days to return the policy and have the premium refunded." The language of the statute requires a thirty day "free look" only on medicare supplement policies which are issued pursuant to a "direct response solicitation." It is my understanding that this phrase, although undefined in the statutes, means through the use of mail, telephone solicitation, or other type of solicitation which does not involve an agent. The statute requires a thirty day "free look" in these instances. Your question is whether the Commissioner, by regulation, could adopt a thirty day "free look" requirement for all policies, not just those issued through "direct response soliciations." Section 6 of the Model Act contains this requirement, as does Section 16, (A)(5) of the Model Regulation. It is my opinion that such a regulation would, in all likelihood, be adopted without authority, and thus would be invalid.
The Commissioner's general authority to adopt rules and regulations is set out at A.C.A. § 23-61-108, which provides in pertinent part as follows:
 (a) the commissioner may make reasonable rules and regulations necessary for or as an aid to the effectuation of any provision of this code.
 (1) No rule or regulation shall extend, modify, or conflict with any law of this state or the reasonable implications thereof. [Emphasis added.]
It is my opinion that a regulation which requires a thirty day "free look" on all medicare supplement policies would "extend" or "modify," if not necessarily conflict with A.C.A. §23-79-112(f)(2), and thus would be contrary to A.C.A. §23-61-108(a)(1).
Your second question is as follows:
 Whether it contravenes the grant of authority under Arkansas law for the promulgation of a regulation by the Arkansas Insurance Commissioner that requires an open enrollment period of six (6) months on all Medicare supplement policies?
You note that a six month "open enrollment" period means that benefits can be excluded under a policy for the first six months for preexisting conditions that the policy holder was treated for within six months of issuance of the policy. We should note, however, that the Model Regulation does not, as you state,require an "open enrollment" period of six months on all medicare supplement policies. Section 7(A)(1) and section 8(A)(1) of the Model Regulation, as well as section 3(B) of the Model Act, each provide that medicare supplement policies shall not exclude or limit benefits for losses incurred more than six months after coverage begins because of a preexisting condition. This requirement is a minimum only, and does not require a mandatory six month "open enrollment" period.
Additionally, Section 11 of the Model Regulation provides that no issuer shall deny a policy because of the health status, claims experience, receipt of health care, or medical condition of an applicant where the application for insurance is submitted in the first six months of the applicant's first enrollment under Medicare Part B. The section then provides that this provision shall not be construed as preventing an exclusion of benefits, during this first six months, for preexisting conditions treated or diagnosed during the six months before the policy became effective. This is also a requirement of federal law.42 U.S.C. § 1395ss(s). Neither Section 11 of the Model Regulation nor identical 42 U.S.C. 1395ss(s) requires a six month "open enrollment" period; they merely are not to be construed as preventing one.
These distinctions are important, as they relate to the Commissioner's authority under Arkansas law. With regard to this question, you cite A.C.A. § 23-86-105(a)(1), which governs the commissioner's general authority over Medicare supplement policies. It provides in pertinent part that:
 (a) For the purpose of protecting the public against misrepresentations and misleading representations regarding the benefits provided in any group Medicare supplement policy or certificate issued under a group Medicare supplement policy, the commissioner is directed to prescribe, and each policy shall contain, in substance, the following provisions:
 (1) Minimum standards and minimum benefit provisions which shall be included in and made part of every policy or certificate delivered or issued for delivery in this state. [Emphasis added.]
It is my opinion that this provision would likely allow the Commissioner to adopt Sections 7, 8 and 11 of the Model Regulation, but would not allow the adoption of a regulation which required a six month mandatory "open enrollment" period on all policies. The state statute above allows the commissioner to promulgate minimum standards. The provisions of Section 7, 8 and 11 of the Model Regulation appear to be minimums. They do not prohibit an issuer from providing a more lenient period for preexisting conditions, or no period at all.
It is thus my opinion that the Commissioner would have the authority under state law, to enact Sections 7, 8 and 11 of the Model Regulation, but could not require a mandatory six month open enrollment period.
Your third question is as follows:
 Whether it contravenes the grant of authority under Arkansas law for the promulgation of a regulation by the Arkansas Insurance Commissioner to establish a policy for holding public hearing prior to approval of premium increases for Medicare supplement policies.
In connection with this question, you cite two provisions of the Arkansas Code. Section 23-79-109(a)(4) (Cum. Supp. 1991) provides as follows:
 No medicare supplement policy, contract, rider or endorsement form or certificate, whether group or individual, shall be issued, delivered, or used as to a subject of insurance resident, located, or to be performed in this state unless the rates have been filed with and approved by the commissioner.
[Emphasis added.]
You also cite A.C.A. § 23-61-303(a) which provides that "[t]he commissioner may hold hearings for any purpose within the scope of this code deemed by him to be necessary."
It is my opinion, in light of these two code provisions, that the adoption of Section 14 and Section 13(D) of the Model Regulation, which provide, respectively, for the approval of premium rates and for public hearings thereon (see42 U.S.C. § 1395ss(b)(1)(G), would be consistent with Arkansas law. As noted, A.C.A. § 23-79-109(a)(4) already requires the "rates" on medicare supplement policies to be approved by the Commissioner. There is additional authority in the Arkansas Code, (A.C.A. §23-61-303(a)) for the commissioner to hold hearings for any purpose within the scope of the code. It is thus my opinion that the answer to your third question is "no."
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh